IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COREY LOMAX,                          )
                                      )
                    Petitioner,       )        Civil Action No. 2:18-cv-594
                                      )
        v.                            )
                                      )        Magistrate Judge Patricia L. Dodge
ROBERT GILMORE, *et al.*,             )
                                      )
                    Respondents.      )

**<u>MEMORANDUM</u>**

Pending before the Court[1] is the Petition for a Writ of Habeas Corpus (ECF No. 1) filed by state prisoner Corey Lomax ("Petitioner") pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the Court will deny the Petition and deny a certificate of appealability.

**I.      Introduction**

Petitioner challenges the judgment of sentence imposed upon him on March 24, 2009 by the Court of Common Pleas of Washington County on his convictions of robbery, criminal conspiracy to commit robbery, theft by unlawful taking, and aggravated assault. The charges stemmed from an incident that occurred the evening of March 15, 2008 between Petitioner, his co-defendant, Detrius Wade, and the victim, Anthony Franell.

Petitioner raises the following claims for habeas relief:

Claim I        Trial counsel was ineffective for:

               A.    failing to investigate and present the testimony of Petitioner's alibi witness, Courtney Wright;

               B.    advising Petitioner not to testify at trial;

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

C.       failing to object to the jury instruction given on:

      1.       aggravated assault; and

      2.       prior inconsistent statements;

Claim II        Trial counsel was ineffective for failing to move for the severance of Petitioner's trial from that of Wade;

Claim III       The prosecution violated the rule of *Brady v. Maryland*, 373 U.S. 83 (1963) because it suppressed evidence that it had entered into negotiations with Franell to give him a more lenient sentence in his own criminal case in exchange for his testimony against Petitioner and Wade, and it knowingly presented, or failed to correct, false testimony that it had not;

Claim IV       Trial counsel was ineffective for failing to move for a change of venue because the jury pool was tainted by pre-trial sensational and inflammatory publicity;

Claim V        The mandatory minimum sentences allegedly imposed upon Petitioner pursuant to 42 PA. CONS. STAT. § 9712 violated the rule of *Alleyne v. United States*, 570 U.S. 99 (2013) because there was no finding by the jury that he used a firearm during the commission of a crime by evidence beyond a reasonable doubt; and

Claim VI       There was insufficient evidence to support the jury's verdicts.

ECF No. 2 at 2-15.[2]

In their answer (ECF No. 9), Respondents contend that Petitioner procedurally defaulted any claim he did not also raise to the Superior Court of Pennsylvania on direct appeal or in his state-court collateral proceeding under Pennsylvania's Post Conviction Relief Act ("PCRA"). Respondents also contend that none of Petitioner's claims have merit. In his reply (ECF No. 16), Petitioner asserts that under the rule of *Martinez v. Ryan*, 566 U.S. 1 (2012), the Court should excuse the default of any procedurally defaulted claim and review it *de novo*.

---

[2] Throughout this memorandum, the Court refers to Petitioner's claims according to the way he numbered them in his brief in support of his petition. ECF No. 2 at 2-15.

## II.      Relevant Background[3]

Petitioner and Wade's joint jury trial was held in January 2009. The Commonwealth

presented the testimony of five witnesses, including but not limited to Franell, Franell's criminal

defense attorney, Peter Marcoline, Esq., and, the lead investigator in the case, Detective Mark

Marcucci. The trial court summarized the evidence introduced at trial as follows:

> In December 2007, Anthony Franell was the victim of a burglary in which
> a large gold chain and several televisions were stolen from his residence. *See*, trial
> Transcript ("T.T."), pg. 7. On March 15, 2008, [Petitioner's] co-defendant in this
> case, Detrius Wade, placed a telephone call to Mr. Franell and indicated that he had
> something of Mr. Franell's and asked if Mr. Franell wanted it back.[2] (*See*, T.T.,
> pg. 10). Mr. Franell testified that he assumed Co-Defendant Wade meant that he
> had the chain. (*Id.*) Mr. Franell then arranged to meet Co-Defendant Wade and
> proceeded to pick up both Co-Defendant Wade and [Petitioner]. (*Id.* at 11).
> Mr. Franell then drove them back to his residence in order to retrieve money to pay
> the men for the return of his chain. Upon arriving at his home, Mr. Franell then took
> the chain upstairs and hid the chain in his room underneath his mattress before
> returning downstairs to where [Petitioner] and Co-Defendant Wade had remained.
> (*Id.* at 14). The three men then proceeded to play pool, smoke marijuana and rap in
> a recording studio that was within the victim's home.
>
> > [2] A myspace video was posted approximately one month after the
> > burglary in which several males were seen displaying the chain and
> > rapping about how they "got yo chain." The Defendants were not
> > depicted in the video, however, it was testified to at trial that one of
> > the men in the video, Marvis Johnson, was the father of the children
> > of [Petitioner's] sister, and that the men in the video were acquainted
> > with the Defendants.
>
> After exciting the studio [Petitioner] pulled a .380 handgun on Mr. Franell.
> (*Id.* at 16). Co-Defendant Wade then proceeded to pull out another firearm as well.
> (*Id.*) [Petitioner] ordered Mr. Franell to place his hands in the air and to "get the
> f***on your knees." (*Id.*) Co-Defendant Wade then asked Mr. Franell where the
> chain was and proceeded to go upstairs to look for the chain. (*Id.* at 17). [Petitioner]
> continued to hold his weapon on Mr. Franell while his co-defendant searched for
> the chain. While Mr. Franell was alone with [Petitioner], Mr. Franell began to rise
> to his feet and stand up. (*Id.* at 18). When Mr. Franell stood up, [Petitioner] fired
> his weapon at Mr. Franell. [Petitioner] fired his weapon four times, striking the

---

[3] Respondents submitted a hard copy of the state court record. The documents contained in it are
indexed and numbered and the Court cites to those documents as "SCR No. ___." At ECF No. 27,
Respondents electronically filed the transcripts of Petitioner's trial, sentencing hearing, and PCRA
hearing.

victim once in his upper right chest.[5] [Petitioner] and his Co-Defendant Wade then exited the home and took the victim's 1997 Cadillac Coupe Deville.

> [5] Mr. Franell was wearing a heavy winter coat at the time and at trial it was revealed that the coat had several bullet holes in it from the shooting. The bullet, although striking the victim in the upper chest, ricocheted within his body and was lodged in his groin.
>
> The victim, Mr. Franell[,] proceeded to call 911. When officers responded to the scene and questioned Mr. Franell about what happened, Mr. Franell responded that "two dirty n******," had shot him, but did not tell the officer the name of any individuals. (*Id.* at 26). Mr. Franell was then transported to the hospital and treated for his gunshot wound. On March 18, 2008, Mr. Franell again spoke to the police. (*Id.* at 28). Mr. Franell at first related to the police that two men wearing masks had been involved. (*Id.* at 30). Within a week [on March 25, 2008], however, Mr. Franell related to the police that he knew who the men were, but wanted some time to move out of his residence before charges were filed. (*Id.* at 31). At that time, Mr. Franell indicated to the police that [Petitioner] and Detrius Wade had robbed him and that [Petitioner] had been the one who fired his weapon at him.

*Commonwealth v. Lomax*, No. 1045-2008, slip op. at 1-3 (C.P. Washington Co. Aug, 27, 2009) ("*Lomax I*") (additional footnotes omitted), SCR No. 40.

On direct examination, Franell recounted what happened on March 15, 2008. He admitted that he did not identify Petitioner and Wade when the police responded to his 911 call, or when he was first interviewed by Det. Marcucci on March 18, 2008. Trial Tr. at 26, 29-30. Franell said that he initially was afraid to identify Petitioner and Wade, but that upon the advice of Attorney Marcoline, he reported to Det. Marcucci on March 25, 2008 what really happened. *Id.* at 31-32.

During his cross-examination, Franell was asked in more detail about his prior inconsistent statements, including one that he gave to the attending physician at the hospital. *Id.* at 67. Franell denied giving that prior inconsistent statement, *id.*, but the defendants later introduced his medical report from the hospital the night of the shooting. *Id.* at 174-76, 190-91. In it, the attending physician recorded that Franell "initially stated that he was shot by an unknown assailant during a drive-by shooting [and] eventually changed his story to state that he was being held up on his knees with his hands in the air with a gun apparently pointed down on his right chest." *Id.* at 191.

The police searched Franell's home after the shooting and criminal charges were filed against him in the Court of Common Pleas for Washington County for items found there.[4] Franell testified that no one had promised him any benefit in his own criminal case in exchange for his testimony against Petitioner and Wade. *Id.* at 33.

Marcoline's testimony corroborated Franell's. He stated that Franell met with him on March 17, 2008 and indicated that did not want to identify his assailants because he was afraid. *Id.* at 103-05. He advised Franell to contact the police and cooperate with their investigation. *Id.* at 106. Marcoline further testified that the Commonwealth had not made any promises of leniency in exchange for Franell's testimony. *Id.* at 107. He also said that there had been no discussion about a plea offer between himself and the assistant district attorney prosecuting Franell's case. *Id.* at 112-14. On cross-examination, Marcoline acknowledged the incentive an individual in Franell's situation had to cooperate with the Commonwealth in the hope that it would benefit him in his own case. *Id.* at 118-22, 125-28. He also acknowledged that on two prior occasions he had moved to postpone Franell's plea hearing or trial. On the first occasion, in November 2008, Marcoline requested a postponement "because the Commonwealth was requesting [Franell] testify at another trial[.]" *Id.* at 112. On the second occasion, in December 2008, Marcoline wrote "no offer yet" on the form requesting the postponement. *Id.* at 115.

---

[4] The police executed a search warrant on Franell's home and found marijuana, a pipe, and a stolen handgun. On April 2008 he was charged with two misdemeanor offenses: receiving stolen property, in violation of 18 PA. CONS. STAT. § 3925(A), and intentionally possessing a controlled substance, in violation of 35 PA. CONS. STAT. § 780-113(a)(16). Approximately two months after Petitioner and Wade's trial, Franell pleaded guilty to those crimes and the court sentenced him to a term of probation of 12 months on the drug charge to be followed by a term of three years of probation on the receiving stolen property charge. *See* Pet.'s Ex. A, Franell's Plea and Sent. Hr'g Tr., ECF No. 2-1.

Det. Marcucci testified that investigators found two brass .380 shell casing casings and a .380 slug near the location in the house where Franell stated Petitioner had shot him. *Id.* at 131. He further testified that Franell indicated to him that he was afraid to identify Petitioner and Wade as his assailants, and that when he finally did on March 25, 2008, Franell asked him to delay filing charges against them for a week so that he could move out of his house "so they don't know where I'm at." *Id.* at 139. Det. Marcucci stated that he did not promise Franell anything in exchange for his identification. *Id.* at 139-40.

Petitioner did not testify and presented no witnesses in his defense. Wade did not testify either. His defense presented one alibi witness who stated that Wade, but not Petitioner, was with him at a friend's house at the time the crimes where committed. *Id.* at 196-201.

The jury found Petitioner and Wade guilty of the crimes of robbery, criminal conspiracy to commit robbery, and theft by unlawful taking (Franell's car). It also found Petitioner guilty of aggravated assault for shooting Franell. It acquitted him of the crime of attempted homicide.

Prior to his sentencing, the Commonwealth filed a notice of intention to seek application of the mandatory minimum sentence of at least five years pursuant to 42 PA. CONS. STAT. § 9712 on Petitioner's aggravated assault and robbery convictions because he used a firearm during the commissions of those crimes. SCR No. 22. The trial court sentenced Petitioner on March 24, 2009 to a series of consecutive sentences, for a total aggregate term of imprisonment of 15 to 35 years, as follows: robbery, 5 to 10 years; criminal conspiracy to commit robbery, 3 ½ to 10 years; aggravated assault, 5 to 10 years; and, theft by unlawful taking, 1 ½ to 5 years.

Petitioner, through trial counsel, filed a motion for a new trial (SCR No. 24) within which he raised numerous grounds for relief that he now raises before this Court. He contended that: (1) the Commonwealth violated *Brady* by failing to disclose that at the time of trial it had in fact

entered into negotiations with Franell to give him a more lenient sentence in his own criminal case (Claim III); (2) the jury pool was tainted by prejudicial pre-trial publicity and newspaper reports (the underlying claim in Claim IV); and, (3) the Commonwealth introduced insufficient evidence to convict him of any of the crimes (Claim VI).

The trial court denied Petitioner's motion. SCR No. 28. Petitioner then filed a direct appeal, and the court appointed him new counsel. In his concise statement of matters complained of on appeal, Petitioner asserted, in relevant part, that the trial court erred in denying the claims he brought in his motion for a new trial. He also asserted that the sentenced imposed upon him pursuant to § 9712 was invalid because there was no finding by the jury that he used a firearm during the commission of his crimes (Claim V).

The trial court evaluated Petitioner's claims in its Rule 1925(a) opinion and advised the Superior Court that it should affirm Petitioner's judgment of sentence. It explained that Claim III (*Brady*) had no merit because Petitioner did not present any evidence to support his allegations. *Lomax I*, No. 1045-2008, slip op. at 10-12. It further explained that the Commonwealth introduced sufficient evidence to support each of Petitioner's convictions (Claim VI). *Id.* at 5-7. Regarding Claim IV (pre-trial publicity), the trial court noted that Petitioner waived this issue because he did not raise it in a pre-trial motion. It explained, however, that if he had filed such a motion it would have been denied because the pre-trial publicity in the case was not sensational and inflammatory. *Id.* at 12-13. The trial court stated that Claim V (§ 9712 sentencing claim) was frivolous. *Id.* at 4 n.6.

The Superior Court affirmed Petitioner's judgment of sentence in *Commonwealth v. Lomax*, No. 1236 WDA 2009, slip op. (Pa. Super. Ct. Apr. 19, 2010) ("*Lomax II*"), SCR No. 44. It determined that the trial court in *Lomax I* had "thoroughly and properly" disposed of Petitioner's

claims and it denied each of them for the reasons stated in that decision. *Lomax II*, No. 1236 WDA 2009, slip op. 2-3.

The Supreme Court of Pennsylvania denied a petition for allowance of appeal on October 20, 2010. Petitioner did not file a petition for certiorari with the United States Supreme Court. Accordingly, his judgment of sentence became final on or around January 18, 2011, a date that is relevant in conducting the retroactivity analysis required for the disposition of Claim V (§ 9712 sentencing claim). *See, e.g., Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (citing *Griffith v. Kentucky*, 479 U.S. 314, 321, n.6 (1987) ("[a] state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.")).

Petitioner next filed a *pro se* PCRA petition. SCR No. 45. The trial court, now the PCRA court, appointed new counsel to represent him and counsel filed two amendments to the PCRA petition. SCR No. 51; PCRA Hr'g Tr. at 4-7. Before the PCRA court, Petitioner raised several claims of trial counsel ineffectiveness that he now brings before this Court. Specifically, he claimed that trial counsel was ineffective for: (1) failing to investigate and present the testimony of alibi witness Courtney Wright (Claim I.A); (2) incorrectly advising him that he should not testify because his criminal record contained a *crimen falsi* (Claim I.B); and, (3) failing to object to an incomplete jury instruction given on aggravated assault (Claim I.C.1). Petitioner *did not raise* to the PCRA court the ineffective assistance of trial counsel claims he brings before this Court in Claim I.C.2 (failure to object to the jury instruction regarding prior inconsistent statements), Claim II and Claim IV (failure to file a pre-trial motion for severance or for change of venue, respectively).

The PCRA court held an evidentiary hearing on September 2, 2015 at which Petitioner and trial counsel testified. Petitioner stated that his alleged alibi witness, his cousin Courtney Wright, was living in Virginia on March 15, 2008. He testified that he drove to Wright's home the day before, on March 14, 2008, to attend her St. Patrick's Day party and that he did not start the approximately six-hour drive back to Washington County until 6:00 p.m. on March 15, 2008. Therefore, Petitioner testified, he could not have committed the crimes since they occurred less than two hours later, around 8:00 p.m. that evening. PCRA Hr'g Tr., at 75-83.

Petitioner testified that he provided trial counsel with Wright's name as a potential alibi witness. *Id.* at 76. He stated that it was not until the first day of trial that he learned that trial counsel had not contacted her and that she would not testify in his defense. *Id.* at 77. According to Petitioner, he asked trial counsel whether he should testify himself, and counsel advised him that it would not be wise for him to do so because his prior criminal record contained *crimen falsi* and there was no witness to corroborate his alibi. *Id.* at 78, 100, 108.

Trial counsel testified that he could not recall Petitioner providing him with Wright's name as an alibi witness. *Id.* at 31-34, 50-51. He also stated that he could not recall if Petitioner had requested to testify on his own behalf. *Id*. at 34. When asked if there was a strategic reason for Petitioner not testifying, trial counsel responded: "For me to answer that question years later, I think it would be difficult. At the time–I really couldn't answer. I think it's a game-time decision and a trial prep decision." *Id.* at 36.

Wright was living in Florida at the time of Petitioner's PCRA proceeding. PCRA counsel unsuccessfully attempted to subpoena her and even purchased a plane ticket for her so that she could testify at the PCRA hearing. *Id.* at 110-14. Wright did not appear at the September 2, 2015 hearing. At Petitioner's request, the PCRA court scheduled another hearing for October 5, 2015

so that Petitioner could present Wright's testimony in support of his claim that she could have been called at trial as an alibi witness. *Id.* at 111-17. Wright also failed to appear at that the second PCRA hearing.

The PCRA court denied Claims I.A, I.B, and I.C.1 on the merits. *Commonwealth v. Lomax*, No. 1045-2008, slip op. (C.P. Washington Co. Mar. 2, 2016) ("*Lomax III*"), SCR No. 53. It expressly stated that it did not find Petitioner's PCRA testimony to be credible. *Id.* at 8-10. The PCRA court also determined that "there is absolutely no evidence that Courtney Wright would have testified if Trial Counsel had contacted her[,]" and it explained that she failed to appear at both PCRA hearings. *Id.* at 8-9.

Petitioner, through PCRA counsel, filed an appeal with the Superior Court. Importantly, in this appeal Petitioner *raised only Claim I.C.1* (trial counsel was ineffective for failed to object to the jury instruction regarding aggravated assault). SCR No. 56. The PCRA court issued a Rule 1925(a) opinion advising that that claim should be denied. *Commonwealth v. Lomax*, No. 1045-2008, slip op. (C.P. Washington Co. May 26, 2016) ("*Lomax IV*"), SCR No. 57. The Superior Court affirmed the PCRA court's decision in *Commonwealth v. Lomax*, No. 476 WDA 2016, 2017 WL 3573802 (Pa. Super. Ct. Aug. 18, 2017) ("*Lomax V*"). It agreed with the PCRA court that Petitioner failed to demonstrate that he was prejudiced by counsel's failure to object to the instruction at issue.

After the Supreme Court of Pennsylvania denied a petition for allowance of appeal, Petitioner commenced this federal habeas action by filing his petition (ECF No. 1) and brief in support (ECF No. 2) and raising the claims set forth above.

### III.   Discussion

#### A.   Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g., Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017). There are other prerequisites that he must satisfy before he can receive habeas relief (for example, he must overcome the burden imposed upon him by the standard of review set forth at 28 U.S.C. § 2254(d)), but, ultimately, Petitioner cannot receive federal habeas relief unless he demonstrates that he is in custody in violation of his federal constitutional rights. 28 U.S.C. § 2254(a); *see, e.g., Vickers*, 858 F.3d at 849.

#### B.   Exhaustion and Procedural Default

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g., Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Importantly, a petitioner must have "invoke[d] one complete

round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have first presented every federal constitutional claim raised in his federal habeas petition to *the Superior Court either on direct or PCRA appeal*. *See, e.g., Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. To succinctly summarize it, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules (such as, for example, the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

When a claim is procedurally defaulted, a petitioner can overcome the default if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"[5] *Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be

---

[5] A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). In only the extraordinary case will a petitioner be able to establish a "fundamental miscarriage of justice." Petitioner does not argue that his case qualifies. It clearly does not.

something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original).

The general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely upon PCRA counsel's ineffectiveness to overcome the default of a federal habeas claim. *Id.* at 752-54; *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017) ("An attorney error does not qualify as 'cause' to excuse a procedural default unless the error amounted to constitutionally ineffective assistance of counsel. Because a prisoner does not have a constitutional right to counsel in state postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default."). However, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court announced a limited, but significant, exception to this rule. Petitioner relies upon *Martinez* in an attempt to avoid the default of several of his claims. That decision's application to those claims is discussed below.

C.      **Standard of Review**

In 1996, Congress made important amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

A finding of fact made by a state court always has been afforded considerable deference in a federal habeas proceeding. AEDPA continued that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d). It applies "to any claim that was adjudicated on the merits" by the Superior Court[6] and it prohibits a federal habeas court from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court (here, the Superior Court) made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.,* *Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

Section 2254(d)(1) applies to questions of law and mixed questions of law and fact. In applying it, this Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C.

---

[6] When applying § 2254(d), the federal habeas court considers the "last reasoned decision" of the state courts. *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)); *Brown v. Sup't Greene SCI*, 834 F.3d 506, 512 (3d Cir. 2016). When applying § 2254(d)'s standard of review to the claims adjudicated on the merits in Petitioner's direct appeal, this Court cites to the trial court's 1925(a) opinion in *Lomax I*, which was adopted in full by the Superior Court in *Lomax II*.

§ 2254(d)(1). It is "'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 280 (2016) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, this Court must determine whether the Superior Court's adjudication of the claim at issue was "contrary to" that law. *Williams*, 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have independent meaning). A state-court adjudication is "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Williams*, 529 U.S. at 406. Therefore, the issue in most federal habeas cases is whether the adjudication by the state court survives review under § 2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis*, 834 F.3d at 281 (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it

"'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must demonstrate that the Superior Court's decision "*was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*." *Richter*, 562 U.S. at 103 (emphasis added). As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer, supra*, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013).[7] "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis*, 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion

---

[7] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert*, 387 F.3d at 235. The Court of Appeals has instructed that § 2254(d)(2), when it applies, provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals's decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

If the Superior Court did not adjudicate a claim on the merits, the Court must determine whether that was because Petitioner procedurally defaulted it. If the claim is not defaulted, or if Petitioner has established grounds to excuse his default, the standard of review at § 2254(d) does not apply and the Court reviews the claim *de novo. See, e.g., Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). However, in all cases and regardless of whether the standard of review at § 2254(d) applies, the state court's factual determinations are presumed to be correct under § 2254(e)(1) unless Petitioner rebuts that presumption by clear and convincing evidence. *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010); *Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007) ("the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d).") (citing *Appel*, 250 F.3d at 210).

D.    **Ineffective Assistance of Trial Counsel Claims**

Claims of ineffective assistance are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. 466 U.S. at 685-

17

87. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Titlow*, 571 U.S. at 24.

Under *Strickland*, it is Petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" *Titlow*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690); *Richter*, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689). Counsel cannot be deemed ineffective for failing to raise a meritless claim. *See, e.g., Preston v. Sup't Graterford SCI*, 902 F.3d 365, 379 (3d Cir. 2018).

*Strickland* also requires that Petitioner demonstrate that he was prejudiced by trial counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Counsel's errors must be so serious as to have "deprive[d] [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. Under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

The Supreme Court in *Strickland* noted that although it had discussed the performance component of an effectiveness claim prior to the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order. 466 U.S. at 697. If it is more efficient

18

to dispose of an ineffectiveness claim on the ground that the petitioner failed to meet his burden of showing prejudice, a court need address only that prong of *Strickland. Id.*

Petitioner raises six claims of trial counsel's ineffective assistance: Claims I.A, I.B, I.C.1, I.C.2, II, and IV. However, he only raised one of those claims—Claim I.C.1—in an appeal to the Superior Court. The Court addresses that claim first.

<u>Claim I.C.1</u>

Under Pennsylvania law, a person is guilty of the crime of aggravate assault if he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 PA. CONS. STAT. § 2701(A)(1). The trial court read to the jury the standard instruction for that crime:

> To find [Petitioner] guilty of [aggravated assault] you must find that each of the following elements have been proven beyond a reasonable doubt. First, that [Petitioner] caused serious bodily injury to Anthony Franell. Serious bodily injury is bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. Second, that [Petitioner] acted intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.
>
> A person acts intentionally with respect to serious bodily injury when it is his conscious object or purpose to cause such injury.
>
> A person acts knowingly with respect to serious bodily injury when he is aware that it is practically certain that his conduct will cause such a result.
>
> A person acts recklessly with respect to serious bodily injury when he consciously disregards a substantial and unjustifiable risk that serious bodily injury will result from his conduct. *The risks must be of such a nature and degree that considering the nature and intent of [Petitioner's] conduct and circumstances known to him that his disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in [Petitioner's] situation. It is shown by the kind of reckless conduct from which a life threatening injury is almost certain to occur.*
>
> If after considering all of the evidence you find that the Commonwealth has established each of these elements beyond a reasonable doubt, then you should find [Petitioner] guilty of Aggravated Assault causing serious bodily injury. Otherwise, you must find [Petitioner] not guilty of this charge.

Trial Tr. at 223-25 (emphasis added).

During its deliberations, the jury asked the trial court to again define what constitutes the crime of aggravate assault. *Id.* at 238. In response, the trial court reread the above instruction except for the italicized portion. *Id.* at 240-41. Petitioner maintains that trial counsel should have objected to this second reading of the instruction because, by omitting the italicized portion, the instruction "allowed the jury to convict [him] of aggravated assault without any deliberation as to whether they found that [his] actions [were] a gross deviation from the standard of conduct that a reasonable person would observe under the circumstances and whether [his] conduct was of such a nature that life-threatening injury was almost certain to occur." ECF No. 2 at 5-6.

In rejecting this claim, the PCRA court determined, among other things, that Petitioner failed to demonstrate that "there was a reasonable probability that, but for trial counsel's inaction, the outcome of [his trial] would have been different." *Lomax IV*, No. 1045-2008, slip op. at 13. The Superior Court agreed that Petitioner failed to meet *Strickland*'s prejudice prong, noting that the "the evidence demonstrated that [Petitioner] pointed a firearm at the victim, fired the weapon four times, and then ultimately shot the victim in the chest" and that Petitioner's "argument assumes that the jury did not convict [him] on the basis that he either intentionally or knowingly committed the crime of aggravated assault." *Lomax V*, No. 476 WDA 2016, slip op. at 2 (quoting *Lomax IV*, No. 1045-2008, slip op. at 13-14).

The Superior Court's adjudication withstands AEDPA's deferential standard of review. It applied the *Strickland* standard when it evaluated this claim.[8] *Id.* at *1-2; *see also Lomax IV*,

---

[8] Pennsylvania courts typically articulate *Strickland's* standard in three parts, while federal courts set it out in two. The legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. *See, e.g. Commonwealth. v. Mitchell*, 105 A.3d 1257, 1266 (Pa. 2014) ("this Court has divided [*Strickland's*] performance component into sub-parts dealing with *Footnote continue on next page…*

No. 1045-2008, slip op. at 5-6, 13-14. Therefore, its adjudication was not "contrary to" *Strickland* under § 2254(d)(1). *See, e.g., Williams*, 529 U.S. at 406.

In order to show that the Superior Court's adjudication was an "unreasonable applicable of" *Strickland* under § 2254(d)(1), Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *See, e.g., Dennis*, 834 F.3d at 281. As set forth above, he must demonstrate that the Superior Court's decision was objectively unreasonable, which means that it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Petitioner has not met this difficult burden.

The Court is mindful that when language in a jury instruction is challenged, the language in question "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Here, Petitioner has no objection to the trial court's first reading of the aggravated assault instruction. The trial court's second reading did not conflict with the first reading. Rather, the only difference between the two readings is that, during the second one, the trial court omitted the description of what type risk a defendant must engage in to act recklessly with respect to serious bodily injury. Considering the trial court's instruction in its entirety, there is no basis to conclude that the jury misunderstood or misapplied the elements of the crime of aggravated assault.

---

arguable merit and reasonable strategy. Appellant must, therefore, show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and Appellant suffered prejudice as a result."); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-18 (Pa. 2012) ("In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland*[.]").

In any event, given the evidence introduced at trial that Petitioner fired his weapon at Franell four times and shot him once in the chest, the Court cannot conclude that there is a reasonable probability that the jury would have acquitted him of aggravated assault had trial counsel ensured that the omitted language was included in the second reading of the instruction. Therefore, Petitioner has not demonstrated that he was prejudiced by trial counsel's inaction, let alone that the Superior Court's adjudication of this claim was an "unreasonable application of" *Strickland*.

The only remaining question is whether the Superior Court's adjudication "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). It was not. To the extent that the Superior Court made any factual determination that precluded relief on this claim, those findings had the necessary evidence in the state court record to survive review under § 2254(d)(2).

In conclusion, because the Superior Court's adjudication of Claim I.C.1 withstands review under § 2254(d), that claim is denied.

<u>Petitioner's additional ineffective assistance of counsel claims</u>

Petitioner's remaining claims of trial counsel's ineffectiveness are Claims I.A (failing to present the testimony of Wright), Claim I.B (advising Petitioner not to testify), Claim I.C.2 (failing to object to the jury instruction regarding prior inconsistent statements), Claim II (failing to file a pre-trial motion for severance), and Claim IV (failing to file a pre-trial motion for change of venue). Respondents contend that Petitioner procedurally defaulted each of these claims because he failed to properly exhaust them.

Petitioner does not dispute that he defaulted the above-cited claims. Rather, he contends that the Court should excuse his default in accordance with the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012).

As set forth above, the general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely upon PCRA counsel's ineffectiveness to overcome the default of a federal habeas claim. *Coleman*, 501 U.S. at 752-54. In *Martinez*, the Supreme Court announced a narrow, but significant, exception to this rule. It held that in states like Pennsylvania, where the law requires that claims of ineffective assistance of trial counsel be raised for the first time in a collateral proceeding,[9] a petitioner may be able to establish "cause" sufficient to overcome a procedural default of a "substantial" claim of trial counsel's ineffectiveness.[10] Importantly, the holding in *Martinez* permits a petitioner to overcome the default of a claim of *trial counsel's ineffectiveness* if he demonstrates that: (1) the claim is "substantial" and (2) he either had no PCRA counsel or PCRA counsel was ineffective within the meaning of *Strickland* for (3) failing to raise the claim in the "*initial review collateral proceeding*." *Martinez*, 566 U.S. at 17.

The Supreme Court in *Martinez* defined "initial-review collateral proceeding" as a collateral proceeding that provides the first occasion to raise a claim of trial counsel's ineffective assistance. *Id.* at 9. Its decision in *Martinez* was influenced by the fact that "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim." *Id.* at 10. The Supreme Court held that because this concern is not present in

---

[9] Under Pennsylvania law, a prisoner must raise claims of trial counsel's ineffective assistance in a PCRA proceeding. *Commonwealth v. Grant*, 813 A.2d 726 (Pa.2002)

[10] The holding in *Martinez* is limited to defaulted ineffective-assistance-of-trial-counsel claims. *See, e.g., Davila*, 137 S. Ct. at 2062-70. It does not apply to any other type of claim. *Id.*

"*appeals* from initial-review collateral proceedings," a petitioner may not use attorney error in a collateral appeal as cause to excuse a procedural default. *Id.* at 16 (emphasis added); *Norris v. Brooks*, 794 F.3d 401, 404-05 (3d Cir. 2015) (*Martinez* "applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals").

<u>Claims I.A and I.B</u>

Because PCRA counsel raised Claim I.A (failing to present the testimony of Wright) and Claim I.B (advising Petitioner not to testify) to the PCRA court (the initial-review collateral proceeding), *Martinez* is not applicable to those claims and Petitioner cannot rely upon it to avoid his default of them. Accordingly, Claims I.A and I.B are denied because they are procedurally defaulted and Petitioner cannot avoid his default. However, Petitioner would not be entitled to habeas relief on Claim I.A and I.B even under a *de novo* review. That is because the PCRA court did not credit the testimony Petitioner gave to support them, and this Court must defer to its credibility determinations under § 2254(e)(1). *See, e.g., Palmer*, 592 F.3d at 392; *Nara*, 488 F.3d at 201; *see also Vickers*, 858 F.3d at 850 (even in pre-AEDPA cases, "'federal habeas courts [had] no license to redetermine credibility of witnesses who demeanor ha[d] been observed by the state trial court, but not by them'") (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (bracketed text added by the Court of Appeals)). Additionally, Wright failed to attend either PCRA hearing and Petitioner failed to meet his burden of demonstrating that she could have provided him with an alibi had she testified at his trial.

Therefore, Claims I.A and B are denied because Petitioner procedurally defaulted them and also because they have no merit.

As for Claim I.C.2, Claim II, and Claim V, because PCRA counsel did not raise them in the initial review collateral proceeding, the rule of *Martinez* could be invoked to avoid Petitioner's

default if he demonstrated that the claim is "substantial"[11] and PCRA counsel was ineffective for failing to raise it. However, because the Court can ascertain that none of these claims have merit, the Court will simply review them *de novo* and deny them on that basis. *Lambrex v. Singletary*, 520 U.S. 518, 525 (1997) (the court may avoid the more complex issue of procedural default and evaluate the claim on the merits if it is more efficient to do so).

Claim I.C.2

Petitioner contends that trial counsel was ineffective for failing to object to the instruction it gave regarding Franell's prior inconsistent statement or statements. The trial court instructed:

> You've also heard evidence that [Franell] may have made a statement or statements on earlier occasions that were inconsistent with his testimony here at trial. You may consider this evidence for one purpose only and that is to help you judge the credibility and the weight of the testimony given by Anthony Franell at this trial. You may not regard evidence of an earlier inconsistent statement of proof of the truth of anything said in that statement.

Trial Tr. at 219. This is the standard Pennsylvania jury instruction given when a prior inconsistent statement has been admitted for the purpose of impeachment. Pa. Suggested Standard Criminal Jury Instructions § 4.08A.

Petitioner argues that, in accordance with *Commonwealth v. Brady*, 507 A.2d 66 (Pa. 1986) and *Commonwealth v. Lively*, 610 A.2d 7 (Pa. 1992),[12] the jury should have been instructed that it

---

[11] The Court of Appeals has explained that an ineffective-assistance-of-trial-counsel claim is "substantial" if it has "some merit." *Workman v. Sup't Albion SCI*, 915 F.3d 928, 938 (3d Cir. 2019). The evaluation of whether a claim has "some merit" is the same one that a federal court undertakes when it considers whether to grant a certificate of appealability. *Id.* Thus, a Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Workman*, 915 F.3d a 938 (a petitioner "must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should be resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'") (quoting *Martinez*, 566 U.S. at 14, which cited *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

[12] Pennsylvania previously limited the use of a prior inconsistent statement of a nonparty witness to impeachment of that witness. In 1986, in *Brady*, the Supreme Court of Pennsylvania held that *Footnote continue on next page...*

could consider Franell's prior inconsistent statements as proof of the truth of anything he said

therein. Petitioner's argument is misguided because the defendants did not introduce evidence of

Franell's prior inconsistent statements to persuade the jury that Franell was in fact a victim of a

drive-by shooting or was robbed by two masked men. Rather, they relied upon that evidence to

impeach the credibility of his trial testimony. Therefore, the trial court's instruction was

appropriate and it adequately explained to the jury that it could consider Franell's prior inconsistent

statements when evaluating whether to believe his trial testimony. There was thus no basis for trial

counsel to object to the instruction, nor was Petitioner prejudiced by counsel's failure to do so.

Based upon the foregoing, Claim I.C.2 is denied on the merits.

### Claim II

Petitioner asserts that trial counsel was ineffective for failing to file a pre-trial motion to

sever his trial from Wade's. Rule 583 of the Pennsylvania Rules of Criminal Procedure provides

that a court "may order separate trials of offenses or defendants, or provide other appropriate relief,

if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.

R. Crim. P. 583. The prejudice must be "real, not fanciful, and must be considered with the

desirability of joint trials." *Commonwealth v. Lambert*, 603 A.2d 568, 573 (Pa. 1992). Where, as

is the case here, a conspiracy is charged, joint trials of the defendants are advisable. *See, e.g.,*

*Commonwealth v. Brown*, 925 A.2d 147, 161 (Pa. 2007). However, if a defendant can show that

there is a strong probability of antagonistic defenses, the trial court should consider granting a

---

otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial
proceeding and is available for cross-examination may be used as substantive evidence to prove
the truth of the matters asserted therein. In 1992, in *Lively*, the Supreme Court of Pennsylvania
clarified that a prior inconsistent statement may be used as substantive evidence only when the
statement is given under oath at a formal legal proceeding; or the statement has been reduced to
writing signed and adopted by the witness; or the statement is a contemporaneous, verbatim
recording of the witness's statements.

severance. "A claim of mere hostility between defendants, or that one defendant may try to exonerate himself at the expense of the other, however, is an insufficient basis upon which to grant a motion to sever….severance should be granted only where the defenses are so antagonistic that they are irreconcilable—*i.e.*, the jury essentially would be forced to disbelieve the testimony on behalf of one defendant in order to believe the defense of his co-defendant." *Id.* at 161-62 (citations omitted).

Here, Petitioner contends that counsel should have filed a motion for severance because there was evidence that Wade, but not Petitioner, was in possession of Franell's stolen gold chain prior to the March 15, 2008 commission of the crimes. Petitioner asserts that since there was no physical evidence linking him to the crimes, he was prejudiced when he was tried with Wade because there was at least some evidence (the chain) connecting Wade to Franell. These arguments would not have supported a successful motion for severance. Franell's identification of Petitioner obviously connected him to the crimes. Additionally, Petitioner's and Wade's defenses were not antagonistic. Although Wade also presented an alibi defense, both he and Petitioner defended themselves by asserting to the jury that Franell's testimony was not credible and, therefore, the Commonwealth failed to establish their guilt beyond a reasonable doubt.

In conclusion, Petitioner has failed to demonstrate that he was prejudiced by trial counsel's failure to file a pre-trial motion for severance. For that reason, Claim II is denied on the merits.

<u>Claim IV</u>

Petitioner argues that the pre-trial publicity in his case was sensational and inflammatory and his trial counsel was ineffective for failing to file a motion for change of venue. The due process clause of the Fourteenth Amendment guarantees a criminal defendant the right to "a trial by an impartial jury free from outside influences." *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966*);*

*see, e.g., Patton v. Yount*, 467 U.S. 1025 (1984); *Rideau v. Louisiana*, 373 U.S. 723 (1963). When prejudicial pre-trial publicity or an inflamed community atmosphere preclude seating an impartial jury, due process requires the trial court to grant a defendant's motion for change of venue, *Rideau*, 373 U.S. at 726, or a continuance, *Sheppard*, 384 U.S. at 362-63.

Although Petitioner did not raise this claim of trial counsel's ineffectiveness during the PCRA proceeding, he did raise the underlying claim—that the pre-trial publicity in his case was sensational and inflammatory and warranted a change of venue—in his motion for a new trial and then on direct review.[13] The state courts deemed it to be waived, but they also addressed it on the merits.[14] In *Lomax I*, which was subsequently adopted in full as the opinion of the Superior Court, the trial court found that "[t]he pre-trial publicity in the case clearly did not rise to the level of being sensational and inflammatory," and it observed that "only two prospective jurors during the voire dire process indicated that they had even heard anything about this case, and both were removed from the jury panel for cause." *Lomax I*, No. 1045-2008, slip op. at 12.

The state court's adjudication in *Lomax I* of the merits of the underlying claim at issue here withstands review under § 2254(d). Petitioner has not demonstrated that it was "contrary to, or an unreasonable application of" any Supreme Court decision under § 2254(d), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2). Because Petitioner's underlying claim regarding the alleged sensational and inflammatory pre-trial publicity has no merit, he cannot

---

[13] It does not appear that Petitioner provided the state court any evidence, such as copies of newspaper articles, to support his contention that the publicity his case generated was sensational and inflammatory. If he did, he has not directed this Court to that evidence.

[14] This Court applies § 2254(d)'s standard of review to that alternative adjudication on the merits. *See, e.g., Rolan v. Coleman,* 680 F.3d 311, 320 (3d Cir. 2012).

prevail on the related ineffectiveness counsel claim, since trial counsel cannot be deemed ineffective for failing to raise a meritless claim.

Accordingly, Claim IV is denied because the state court's adjudication of his underlying claim withstands review under § 2254(d) and his related ineffective assistance claim has no merit.

### E.    Petitioner's Remaining Claims

<u>Claim III</u>

Petitioner asserts that the Commonwealth violated *Brady* because it suppressed evidence that, at the time of his trial and contrary to testimony given by Franell and Marcoline, it in fact had entered into negotiations with Franell to give him leniency in his own criminal case in exchange of his testimony.[15] A *Brady* violation occurs when the government: (1) knowingly presents or fails to correct false testimony; (2) fails to provide requested exculpatory evidence; or, (3) fails to volunteer exculpatory evidence never requested. *Haskell v. Superintendent Greene SCI*, 866 F.3d 139, 149 (3d Cir. 2017) (citing *United States v. Agurs*, 427 U.S. 97 (1976), holding modified by *Unites States v. Bagley*, 473 U.S. 667 (1985)).

To prove a suppressed-evidence *Brady* claim, Petitioner must demonstrate that: (1) the evidence at issue was favorable to the defense, either because it was exculpatory or because it was impeaching; (2) the Commonwealth suppressed the evidence; and (3) the evidence was material, meaning that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Dennis*, 834 F.3d at 309. If the Commonwealth had any agreement with Franell that would have induced him to testify favorably for it at Petitioner's trial, the Commonwealth had an

---

[15] Respondents assert that Petitioner did not raise this claim to the Superior Court. This Court rejects that argument. In *Lomax II*, the Superior Court expressly stated that one of the claims before it was a *Brady* claim. *Lomax II*, No. 1236 WDA 2009, slip op. at 1.

obligation to disclose that information because it would have been impeachment evidence favorable to the defense. *See, e.g., Giglio v. United States*, 405 U.S. 150, 154 (1972); *Bagley*, 473 U.S. at 676.

To prove the related false-testimony *Brady* claim, Petitioner must demonstrate that: (1) a witness committed perjury when he testified; (2) the Commonwealth knew or should have known that the testimony was false and did not correct it; and (3) "'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Haskell*, 866 F.3d at 146 (quoting *Agurs*, 427 U.S. at 103); *Giglio*, 405 U.S. at 154; *Napue v. Illinois*, 360 U.S. 264, 271 (1959)).

The state court denied Petitioner's *Brady* claim because he presented no evidence to support his allegation that the Commonwealth suppressed any evidence or that it presented, or failed to correct, false testimony. *Lomax I*, No. 1045-2008, slip op. at 10-12. The state court held:

> Defense counsel was provided ample opportunity to cross examine both [Franell] and [his] attorney about any possible deals or implicit promises that were made or expected in regards to [Franell's] pending criminal charges and his testimony in the present case. Defense counsel questioned both witnesses at length about the possibility of an expected deal and was not prevented by the Court from cross-examining the witness about any possible deals that had been made or were expected. The Court allowed sufficient questioning and inquiry into whether [Franell] was expecting or did receive an offer of leniency in regards to his testimony in the present case.
>
> The Commonwealth cannot violate *Brady* by failing to disclose evidence that does not exist. The District Attorney's office and the attorney for [Franell] consistently maintained that no plea agreement was discussed or implicitly offered or expected in exchange for [Franell's] testimony. *See Com. v. Hawkins, Jr.*, 701 A.2d 492 (Pa. 1997). Because [Petitioner] has offered nothing more than "conjecture that such an arrangement existed," the claim that a *Brady* violated has occurred is without merit. *Id.*

*Id.* at 11-12.

Because Petitioner failed to present any evidence to the state court to support his allegations that the Commonwealth suppressed evidence or that it presented, or failed to correct, any false

testimony, there is no basis for this Court to conclude that the state court's adjudication was "contrary to or an unreasonable application of" *Brady, Giglio*, or any other Supreme Court decision under § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2).

To support his *Brady* claim in this habeas proceeding, Petitioner has submitted the transcript of Franell's March 6, 2009 plea and sentencing hearing (Pet's Ex. A, ECF No. 2-1 at 2-7) and a copy of a newspaper article that summarizes what occurred at that hearing (*id.* at 8). It does not appear that Petitioner presented these documents to the state court. Therefore, this Court cannot consider them because, when applying AEDPA's standard of review, this Court is limited to the record that was before the state court. 28 U.S.C. § 2254(d)(2) (inquiry when this subsection of AEDPA applies is limited to "the evidence presented in the State court proceeding."); *Cullen v. Pinholster*, 563 U.S. 170, 180-86, and 185 n.7 (2011) (review under § 2254(d)(1), like that under § 2254(d)(2), is limited to the state court record).

However, even if the Court could consider the documents submitted by Petitioner, he would not be entitled to relief on this claim. Nothing in these documents supports a finding that the Commonwealth violated *Brady*. That Franell may have received a light sentence after he testified at Petitioner's trial does not itself demonstrate that Franell and the Commonwealth had an undisclosed express or implicit deal, or were engaged in negotiations for favorable treatment, when he testified at Petitioner's trial. *See, e.g., Simon v. Government of the Virgin Islands*, 929 F.3d 118, 127 (3d Cir. 2019) ("favorable treatment alone is insufficient to state a *Brady* claim.") (citing *Akrawi v. Booker*, 572 F.3d 252, 263 (6th Cir. 2009) ("[T]he mere fact that a witness desires or expects favorable treatment in return for his testimony is insufficient; there must be some assurance or promise from the prosecution that gives rise to a mutual understanding or tacit

agreement.") and *Shabazz v. Artuz*, 336 F.3d 154, 165 (2d Cir. 2003) ("[T]he fact that a prosecutor afforded favorable treatment to a government witness, standing alone, does not establish the existence of an underlying promise of leniency in exchange for testimony.")); *see also Bell v. Bell*, 512 F.3d 223, 234 (6th Cir. 2008) (en banc) ("although we do not take issue with the principle that the prosecution must disclose a tacit agreement between the prosecution and a witness, it is not the case that, if the government chooses to provide assistance to a witness following trial a court must necessarily infer a preexisting deal subject to disclosure under *Brady*…. To conclude otherwise would place prosecutors in the untenable position of being obligated to disclose information prior to trial that may not be available to them or to forgo the award of favorable treatment to a participating witness for fear that they will be accused of withholding evidence of an agreement.").

Moreover, and importantly, during Marcoline's trial testimony the jury heard information regarding the incentive someone in Franell's situation had to testify favorably in support of the prosecution's case, and he acknowledged that Franell's plea hearing/trial had been postponed for reasons related to Petitioner and Wade's trial. The jurors were thus apprised of the inducement Franell had to testify favorably for the Commonwealth and were able to take that information into consideration when they evaluated his credibility.

In conclusion, the state court's adjudication of Claim III withstands review under § 2254(d) and it is denied for that reason.

## Claim V

Petitioner asserts that the mandatory minimum sentences allegedly imposed upon him under § 9712 violated the rule of *Alleyne v. United States*, 570 U.S. 99 (2013) because there was no finding by the jury that he used a firearm during the commission of a crime by evidence beyond a reasonable doubt.

The Sixth Amendment provides that those "accused" of a "crime" have the right to a trial "by an impartial jury[.]" U.S. CONST. amend. VI. This right, in conjunction with the accused's due process rights, requires that each element of a crime be proved to the jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476-77 (2000); *Alleyne*, 570 U.S. at 104. In *Apprendi*, the Supreme Court held that those rights apply to a sentencing factor that would increase a defendant's sentence beyond the *statutory maximum* because, like an element of a separate crime, such a sentencing factor results in a higher sentence than that which could be prescribed for the original crime. 530 U.S. at 490. It announced the rule that: "[o]ther that the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* (emphasis added). *Apprendi* left open the issue of whether a fact that increases the *mandatory minimum* sentence that the court is required to impose must be decided by a jury. In June 2013, the Supreme Court issued *Alleyene* and answered that question in the affirmative. It held that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury and proven beyond a reasonable doubt. *Alleyne*, 570 U.S. at 112.

Here, the parties dispute whether Petitioner defaulted Claim V for failing to raise it the Superior Court. They also dispute whether the trial court in fact imposed a mandatory minimum sentence under § 9712. Petitioner contends that it did, while Respondents maintains that it did not.[16] This Court does not need to resolve either dispute. That because, assuming without deciding that Claim V is not defaulted and that the trial court imposed a mandatory minimum sentence under

---

[16] Although it is not clear to this Court, it may be that the trial court did not imposed a mandatory minimum sentence under § 9712 and instead applied the deadly weapon enhancement at 204 Pa. Code § 303.10 to increase the sentencing guideline ranges for Petitioner's convictions. *See Lomax I*, No. 1045-2008, slip op. at 8-9.

§ 9712, Petitioner is not entitled to relief because the rule announced in *Alleyne* does not apply to him.

Under *Teague v. Lane*, 489 U.S. 288 (1989), a state prisoner seeking habeas relief in federal court may not rely on a "new" constitutional rule of criminal procedure that was announced after the date his judgment of sentence became final. As discussed above, Petitioner's judgment of sentence became final on or around January 18, 2011. That was well before the Supreme Court decided *Alleyne* in 2013. The Court of Appeals has held that *Alleyne* announced a "new" rule that does not apply retroactively to cases on collateral review, such as this one. *United States v. Reyes*, 755 F.3d 210, 212-13 (3d Cir. 2014). The Supreme Court of Pennsylvania has held the same. *Commonwealth v. Washington*, 142 A.3d 810, 820 (Pa. 2016).

Therefore, because *Alleyne* does not apply retroactively to cases on collateral review, it cannot afford Petitioner relief. Claim V is denied for that reason.

Claim VI

In his final claim, Petitioner contends that the Commonwealth introduced insufficient evidence to support the jury's verdicts. In denying this claim on the merits, the state court set forth the elements of each crime for which Petitioner was convicted and explained that Franell's trial testimony, if credited, was sufficient evidence to support each element of each crime. *Lomax I*, No. 1045-2008, slip op. at 5-7.

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze this claim is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). In that decision, the Supreme Court explained that "[t]he Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt" of each element of the offense. *Jackson*, 443 U.S. at 309. Evidence is sufficient to support a conviction if, "after reviewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).

When it denied this claim, the state court applied the Pennsylvania equivalent of the *Jackson* standard. *Lomax I*, No. 1045-2008, slip op. at 5; *see also Evans v. Court of Common Pleas, Delaware Cnty.*, 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). Because it applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). *Williams*, 529 U.S. at 406.

The next inquiry for this Court, then, is whether the state court's decision was an "unreasonable application of" *Jackson* under § 2254(d)(1) or based on an unreasonable determination of the facts under § 2254(d)(2). The Supreme Court has stressed to federal habeas courts conducting this analysis that:

> [w]e have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury…to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, __ (2011) (*per curiam*) (slip op., at 1). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. __, __ (2010) (slip op., at 5)).
> - - -
> [T]he only question under *Jackson* is whether [the jury's] finding[s] [were] so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

*Coleman*, 566 U.S. at 651, 656.

Petitioner has no viable argument that the state court's decision was an "unreasonable application of" *Jackson* or based on an unreasonable determination of the facts. In actuality, his complaint is that the jury's verdict was *against the weight of the evidence* because it should not have credited Franell's testimony. That is purely a state law claim that is distinct from a federal due process claim, and, as such, it is not a claim that is cognizable in federal habeas corpus. *Tibbs v. Florida*, 457 U.S. 31, 37-45 (1982) (weight of evidence claims raise questions of credibility; it is different from a claim that the evidence was insufficient to support the conviction); *see also Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Based upon all of the foregoing, Claim VI is denied. This Court, which must give "considerable deference under AEDPA," to the state court's adjudication of this same claim, *Coleman*, 566 U.S. at 656, cannot grant Petitioner relief under the circumstances presented here.

## F.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied for the reasons given herein. Accordingly, the Court will not issue a certificate of appealability on any of Petitioner's grounds for relief.

## IV.    Conclusion

Based upon the foregoing, the Court concludes that Petitioner has not satisfied his burden of demonstrating that he entitled to the writ of habeas corpus. The Court will deny his Petition and it will deny a certificate of appealability.

An appropriate Order follows.

Date:  October 30, 2020

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge